UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:16-cr-365-T-35TBM

WILLIAM A. DENNIS, and
THOMAS HERRIS SIGLER, III

### UNITED STATES' TRIAL BRIEF

The United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, submits this trial brief in accordance with the Court's Pretrial Order and to assist the Court.   This brief contains a summary discussion of the nature of the case, the elements of the offenses charged in the Indictment, and certain evidentiary and legal issues that the government anticipates may arise during trial.

**I.     The Indictment**

On August 16, 2016, a federal grand jury returned a two-count Indictment against defendant William A. Dennis, charging him with one count of conspiracy against rights, in violation 18 U.S.C. § 241, and one count of making a false statement to a special agent of the FBI, in violation of 18 U.S.C. § 1001.   The same Indictment charges defendant Thomas Herris Sigler, III, with one count of conspiracy against rights, in violation of 18 U.S.C. § 241.

Prior to the indictment of these defendants, Pascual Carlos Pietri entered a guilty plea to one count of conspiracy against rights, in violation of 18 U.S.C. § 241. On June 30, 2015, the Honorable Susan C. Bucklew accepted Pietri's guilty plea, in which Pietri admitted to conspiring with Dennis, Sigler, and J.S. to burn a cross on the property of 7209 Seward Drive, in order to intimidate an African-American man, D.M., and his girlfriend, K.L., in their constitutional right to occupy a dwelling. The Court sentenced Pietri on March 23, 2016, to 37 months' imprisonment.

## II. Summary of Expected Facts

Late on Halloween night 2012, D.M. and K.L., an interracial couple, received phone calls from the Pasco County Sheriff's Office telling them to come home because a cross was on fire in their front yard. Upon arriving home to Seward Drive in Port Richey, D.M. and K.L. saw the remains of a burned wooden cross propped up against their mailbox, and a gathering of neighbors in the street watching the commotion as the fire department and Sheriff's deputies contained the scene. K.L. "couldn't believe the neighbors would go this far."

In the two months leading up to the cross burning, the couple's next-door neighbor, defendant "Tommy" Sigler, and defendant "Bill" Dennis, a neighbor who lived across the street, had repeatedly engaged in racially hateful verbal exchanges with D.M., calling D.M. a "nigger" and threatening to "get

2

him." Moreover, the defendants did not conceal their hatred of D.M. from other residents living in the neighborhood; many of the Seward Drive neighbors witnessed the defendants' racial animosity and verbal abuse directed at D.M. Witnesses will testify that the defendants openly discussed their hatred for D.M. and their anger about him living at 7209 Seward Drive. The defendants' language during these discussions always included racial slurs about D.M. Several witnesses will describe the defendants' hatred of D.M. as "an obsession."

Just three weeks before the cross burning, defendant Sigler physically attacked D.M. in the street in front of defendant Dennis' house; eyewitnesses recall Sigler yelling threats at D.M. such as, "I'm going to get you, you fucking nigger" while beating D.M. to unconsciousness on the pavement. Dennis, who stood by and encouraged Sigler in the attack, tried to prevent a neighbor from intervening to help D.M. The defendants hated D.M. because of his race and were determined to drive him out of the neighborhood. The harassment escalated from verbal abuse to physical assaults and threats to D.M.'s life. Finally, on Halloween night in 2012, Sigler and Dennis, assisted by others in the neighborhood, burned a wooden cross in D.M.'s and K.L.'s front yard.

The FBI's extensive investigation uncovered that four Seward Drive residents were primarily responsible for the cross burning—Dennis, Sigler, J.S.

3

(deceased as of June 2015), and Pascual Carlos Pietri (currently incarcerated in the Federal Bureau of Prisons for his role in this offense). On Halloween night, J.S. threw a small party in his driveway, where several residents, including the defendants, gathered to drink beer and other types of alcohol. As the party came to an end, sometime after 10:30 p.m., the conspirators constructed a cross and burned it in the victims' yard. Multiple eyewitnesses placed both defendants at the party, and a witness who was trick-or-treating saw them and the cross in J.S.'s driveway area. The evidence bears out that the defendants were the ring-leaders of the conspiracy, J.S. provided the wood used to build the cross, and Pietri lit the cross on fire at the direction of the defendants.

When the Pasco County Sheriff's Office, and later the FBI, questioned Dennis about the cross burning, he stated in multiple interviews that he was not at home (or even in the neighborhood) when the cross burning occurred, having gone out to dinner with his sister. Dennis' statements were not only patently false, but material to the FBI's investigation of the cross burning.

### III. Summary of the Law

#### A. Count One: Conspiracy Against Rights, 18 U.S.C. § 241

Section 241 of Title 18 states that it is a felony punishable by up to ten years when "two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State . . . in the free exercise or enjoyment of any

right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same." *See* 18 U.S.C. § 241. To prove a violation of § 241, the government must prove that: (1) there was a conspiracy or agreement between two or more persons that the defendant knowingly joined, intending to accomplish its purpose; (2) the purpose of the conspiracy was to injure, oppress, threaten, or intimidate victims in the free exercise or enjoyment of a right secured to them by the Constitution or laws of the United States; and (3) the planned interference with the protected rights was willful. *See id.*; *United States v. Epley*, 52 F.3d 571, 575-76 (6th Cir. 1995) (noting that specific intent to deprivation of rights is an element of the offense). Section 241 does not require proof of an overt act. *Myers v. United States*, 377 F.2d 412, 422 (5th Cir. 1967).[1]

Here, the evidence will prove that the defendants acted together to threaten and intimidate D.M. and K.L. to interfere with their housing rights because of D.M.'s race. The housing rights in question arise under the civil Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq., which protects the right to "occupy a dwelling without intimidation or interference because of race or

---

[1] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

color," *United States v. Lee*, 935 F.2d 952, 957 (8th Cir. 1991), or afford another person the opportunity to do so.  *See* 42 U.S.C. § 3631.

From in or around August through October 2012, the defendants' conduct toward D.M. escalated from verbal abuse to include racial slurs, to physical violence and threats to D.M.'s life, and culminated in a cross burning in the front yard of K.L.'s residence, where D.M. often stayed overnight and was living by the time of the cross burning.  Witnesses will testify that the defendants' verbal abuse of D.M. always included the word, "nigger," indicating the defendants' conduct was motivated by D.M.'s race.

If the defendants' language did not make this motive clear enough, the defendants chose "an age old symbol of racism" for their final threatening act of intimidation.  *United States v. Gresser*, 935 F.2d 96, 101 (6th Cir. 1991). Historical experience indicates that the burning of a cross on or near the property of an African American constitutes a threat to use force, and is inextricably connected with the race, particularly African Americans.  In *Virginia v. Black*, 538 U.S. 343 (2003), the Supreme Court reviewed the history of the KKK and cross burning, observing, "when a cross burning is directed at a particular person not affiliated with the Klan, the burning cross often serves as a message of intimidation, designed to inspire in the victim a fear of bodily harm.  Moreover, the history of violence associated with the Klan shows that the possibility of injury or death is not just hypothetical."  *Id.* at 357.  In his

separate opinion, Justice Souter wrote, "It is difficult to conceive of an intimidation case that could be easier to prove than one with cross burning, assuming any circumstances suggesting intimidation are present."  *Id.* at 386-87 (Souter, J., concurring in the judgment in part and dissenting in part). And in dissent, Justice Thomas explained, "In our culture, cross burning has almost invariably meant lawlessness and understandably instills in its victims well grounded fear of physical violence."  *Id.* at 391 (Thomas, J., dissenting); *see also Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995) (Thomas, J., concurring) ("In Klan ceremony, the cross is a symbol of white supremacy and a tool for the intimidation and harassment of racial minorities, Catholics, Jews, Communists, and any other groups hated by the Klan.").

The conduct of the defendants in carrying out their conspiracy was willful.  In proving willfulness, the government is not required to prove the subjects knew they were violating a specific federal statute.  *See Bryan v. United States*, 524 U.S. 184, 191-93 (1998).  Here, the defendants understood, as anyone would, that their verbal threats of violence, the physical assault, and the cross burning, were unlawful.  Dennis' false alibi provided to law enforcement further suggests that he was aware that his conduct was unlawful.

### B.  Count Two: False Statements, 18 U.S.C. § 1001

Dennis is also charged with one count of making false statements in violation of 18 U.S.C. § 1001.  Section 1001(a)(2) makes criminally liable

"whoever, in any matter within the jurisdiction of the executive . . . branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation." *See* 18 U.S.C. § 1001(a)(2).   To establish a violation, the government must prove (1) the defendant made a false statement; (2) the statement concerned a material matter; (3) the defendant acted willfully, knowing the statement was false; and (4) the statement was made in a matter within the jurisdiction of a department or agency of the United States.  *United States v. House*, 684 F.3d 1173, 1203 (11th Cir. 2012); Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Offense Instruction O36 (2016).

On March 27, 2014, Dennis stated to the FBI that he was not at home on the night of the cross burning, and he did not get home until after the incident was over and first responders had extinguished the cross.   The government will call multiple witnesses at trial to contradict Dennis' account, and state that they saw Dennis at J.S.'s party and/or shortly thereafter watching the cross burn.   Further, Dennis' own statement to the Pasco County Sherriff's detective is also inconsistent with the false alibi he provided to the FBI.

Dennis' false statements were material.   "A false statement is material if it has a natural tendency to influence, or be capable of influencing, the decision of the decision-making body to which it was addressed; proof of

actual influence is not required." *House*, 684 F.3d at 1203 (internal quotation marks and alteration omitted); *see also United States v. Johnson*, 139 F.3d 1359, 1363-64 (11th Cir. 1998). Dennis' false alibi is material because it goes to the heart of who committed the underlying offense. Dennis was among those known in the neighborhood to harbor racial animosity toward D.M., often calling D.M. a "nigger," and he therefore would have been an obvious suspect of the cross burning crime. His false statements were calculated to draw the FBI's attention away from him and his associates.

Even if Dennis was a mere witness to this crime, his false statements would still be material because they cut off a line of inquiry by law enforcement. At the time Dennis was interviewed, the FBI was trying to figure out who was responsible for the cross burning. To solve this crime, the FBI set about interviewing dozens of witnesses—Dennis among them. By falsely representing to the FBI that he was not at J.S.'s party on Seward Drive on Halloween night in 2012, Dennis was trying to cut off a line of inquiry by the FBI regarding what Dennis witnessed at that party. Basically, if Dennis was not at the party—where the cross was built and feet away from where it was burned—then he could not identify the persons who built, transported, and lit the cross. But, in truth, Dennis was at that party and he took part in building and lighting the cross on D.M.'s lawn. If law enforcement believed Dennis's lies, however, then they would have simply moved on to the next

9

witness, unaware of Dennis's ability to identify the perpetrators of the cross burning. Consequently, whether Dennis took part in the cross burning or merely witnessed it, his false statements were material to the FBI's investigation of this crime.

In making these false statements, Dennis acted willfully because he had the "specific intent to deceive" the FBI. *House*, 684 F.3d at 1205. Dennis wanted the FBI to believe he was not at the party, so that the FBI would not suspect him of being involved in the unlawful cross burning.

### IV. Pending Pre-Trial Motions

On January 17, 2017, the United States filed the following motions in limine:

1. Motion in Limine for a Pretrial Determination on Admission of Evidence of Racially Motivated Vandalism. (Doc. 47). Dennis filed a response on January 31, 2017. (Doc. 52).

2. Second Motion in Limine for a Pretrial Determination on Admission of Witness Testimony as to Statements Made by the Victim In Order to Demonstrate the Victim's State of Mind. (Doc. 48). Dennis' Response was filed on January 31, 2017. (Doc. 53).

3. Third Motion in Limine for a Pretrial Determination on Admission of Voicemail Message as Nonhearsay Statement of a Coconspirator. (Doc. 49). Dennis' Response was filed on January 31, 2017. (Doc. 54).

4. Fourth Motion in Limine to Exclude Testimony of Allegations that the Victim Sold Drugs.  (Doc. 50).  Dennis' Response was filed on January 31, 2017.  (Doc. 55).  Dennis filed an Amended Response on February 21, 2017.  (Doc. 64).

5. Fifth Motion in Limine for a Pretrial Determination on Admission of Evidence of Relationship Between Defendants.  (Doc. 51).  Dennis' Response was filed on January 31, 2017.  (Doc. 56).

Also on January 17, 2017, Dennis moved in limine to exclude Rule 404(B) evidence (Doc. 45), to which the government responded on January 31, 2017.  (Doc. 58).  Dennis also filed a motion in limine on January 17, 2017, to exclude irrelevant evidence (Doc. 46), to which the government responded on January 31, 2017.  (Doc. 57).  All of the above listed motions are currently pending.

## V.     Other Motions and Issues

### A.   Defendant Dennis' Motion to Continue

On March 3, 2017, Dennis moved to continue the trial date in this matter due to counsel's health concerns.  (Doc. 69).  The United States does not oppose up to a four-week continuance and filed a brief response stating its position on March 6, 2017.  (Doc. 72).

### B. Joint Motion for Jury Questionnaire

It is anticipated that the parties will jointly file a motion with the Court requesting the use of a jury questionnaire to aid the parties in voir dire. While a jury questionnaire deviates from the normal practice in this District, a comprehensive voir dire is particularly important in this case because it involves the sensitive and potentially polarizing issue of race and conduct allegedly committed because of the victim's race, color, or national origin. A questionnaire would assist the Court and the parties with efficiently obtaining relevant information and encouraging candid and complete responses from the venire. Along with the joint motion, the parties will file a proposed questionnaire for the Court's consideration. The government anticipates that these documents will be filed pending the resolution of Dennis' motion to continue the trial.

### C. Potential for Resolution Through Plea Agreement

At the time of the filing of this trial brief, Sigler has indicated his intention to plead guilty to Count One of the Indictment and has executed a plea agreement. The United States will file the plea agreement upon receipt. The United States has contacted the assigned Magistrate Judge's chambers to schedule a Rule 11 hearing for the week of March 6, 2017.

### D. Non-hearsay Statements of John Staggers

FBI Special Agent Mary Rowan is expected to testify that she retrieved evidence relevant to the cross-burning from the home of co-conspirator J.S., and specifically, wood from J.S.'s backyard wood pile that matched the type of wood used to construct the wooden cross. Agent Rowan will testify that she retrieved this wood during a consent search of J.S.'s property after J.S. began cooperating with the government in its investigation. Agent Rowan will explain that the reason she retrieved the wood and placed it into evidence was because J.S. told Agent Rowan that the wood used to construct the wooden cross had come from his wood pile in his backyard.

This anticipated testimony from Agent Rowan as to what she was told by J.S. is non-hearsay and admissible. "Statements by out of court witnesses to law enforcement officials may be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions . . . ." *United States v. Baker,* 432 F.3d 1189, 1209 n.17 (11th Cir. 2005); *United States v. Padgett,* 803 F. App'x 884, 886 (11th Cir. 2013) ("Out-of-court witness statements made to law enforcement officials are admissible as non-hearsay if the statements are relevant to explain the course of subsequent investigative actions, and 'the probative value is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement.'") (quoting *United States v. Jimenez,* 564 F.3d 1280, 1288 (11th Cir.

13

2009)); *see also United States v. Churchwell,* 465 F. App'x 864, 865 (11th Cir. 2012) (out-of-court statements admissible as non-hearsay because they explained how investigators got involved in the case and why they sought search warrants for Churchwell's storage unit and residence). The agent's testimony as to what was told to her by J.S. will be offered only to explain why Agent Rowan took the investigative steps she did in retrieving the wood from J.S.'s backyard.

        E.        **Defendant Dennis' Alternative Motive for Conduct Directed at Victim D.M.**

In the government's fourth motion in limine, the government seeks a pretrial determination on the admissibility of evidence alleging that the victim, D.M., sold drugs. (Doc. 50). That motion submits that such evidence is inadmissible character evidence. Arguably, the evidence only becomes relevant and potentially admissible (such evidence is still subject to the Court's analysis under Rule 403, however), if a defendant is using the evidence to demonstrate an alternative motive to explain his conduct toward victim D.M.—that is, if the defendant is admitting to participating in the conspiracy, then he can offer as a defense a motive other than race. The responses filed by Dennis (Doc. 55 and Doc. 64) make apparent that Dennis intends to present D.M.'s alleged drug dealing as an alternative motive for his conduct. The government reiterates its arguments made in the fourth motion in limine

14

as to why this evidence is inadmissible, even if offered as an alternative motive under Rule 405(b).

If the Court rules such evidence admissible, however, the government respectfully argues that the evidence can only be admitted after Dennis has laid the proper foundation for the admission of such speculative and highly prejudicial evidence. Said another way, this is not a case where Dennis can have it both ways—he cannot deny any involvement in the conspiracy, but then offer a motive for a perpetrator who is not him. The evidence of D.M.'s alleged drug dealing is only relevant if it explains the motive behind *Dennis'* conduct toward D.M. Therefore, Dennis must first acknowledge the conduct in question—that is, the conduct alleged in Count One—before he can introduce highly prejudicial evidence to explain his motive behind the conduct. To do otherwise could potentially allow for the admission of speculative and highly prejudicial allegations of D.M.'s drug dealing, only for Dennis to later deny his involvement in any such conduct that would have explained his motives. This would lead to speculative and highly prejudicial character evidence being admitted that never actually ripens into relevant evidence.

Practically, the government's motion in limine would prohibit Dennis from eliciting such evidence during the government's case-in-chief (i.e., during cross-examination of the government's witnesses), as Dennis would not yet

15

have laid the proper foundation for such evidence at that time. If the Court denies the government's fourth motion in limine, and rules the allegations of D.M.'s drug dealing to be admissible to demonstrate Dennis' motive for his conduct toward D.M., then the government requests that the Court specify the proper foundation necessary for Dennis to lay before he can attempt to introduce such evidence. The government respectfully submits that such evidence is inadmissible during the government's case-in-chief.

### VI.     Conclusion

WHEREFORE, the United States respectfully submits this Trial Brief for the assistance of the Court in the above-captioned case.

                                        Respectfully submitted,

                                        A. LEE BENTLEY, III
                                        United States Attorney

By:    */s/ William E. Nolan*
        WILLIAM E. NOLAN
        Trial Attorney, Department of Justice
        Civil Rights Division
        950 Pennsylvania Avenue N.W.
        Washington, DC   20530
        Telephone:   (202) 353-8560
        Facsimile:   (202) 514-8336
        Email: william.nolan@usdoj.gov

        */s/ Josephine W. Thomas*
        JOSEPHINE W. THOMAS
        Assistant United States Attorney
        Florida Bar No. 31435
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone:   (813) 274-6000
        Facsimile:   (813) 274-6358
        E-mail:      josie.thomas@usdoj.gov

        */s/ Simon Gaugush*
        SIMON GAUGUSH
        Assistant United States Attorney
        Florida Bar No. 0440050
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6358
        E-mail: simon.gaugush@usdoj.gov

*U.S. v. Dennis, et al.*               *Case No. 8:16-cr-365-T-35TBM*

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Lyann Goudie, Esq.
>Danny Hernandez, Esq.

>*/s/Simon Gaugush*
>SIMON GAUGUSH
>Assistant United States Attorney
>Florida Bar No. 0440050
>400 N. Tampa Street, Suite 3200
>Tampa, Florida 33602-4798
>Telephone: (813) 274-6000
>Facsimile: (813) 274-6358
>E-mail: simon.gaugush@usdoj.gov